UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**, <br><br>               v. <br><br> **ORLANDO BELL**, <br>            Defendant. | Case No. 1:17-cr-00234-7 (TNM) |

**MEMORANDUM ORDER**

An investigation of drug dealers in southeast Washington, D.C., led officers to stop a car driven by Orlando Bell. They found a gun in his pants pocket and, during a later strip search, discovered two bags of crack cocaine between his buttocks. A jury convicted Bell of possessing the drugs with intent to distribute them and of possessing a gun during a drug trafficking offense.

Bell now moves under 28 U.S.C. § 2255 to vacate his sentence. He argues that his lawyers were ineffective and that he is entitled to certain evidence about his search. The Court denies that motion because Bell has not shown that his lawyers were ineffective nor that he has good cause for discovery.

**I.**

In 2015, a task force led by the FBI began to investigate drug dealing in the Parkchester Birney Place neighborhood. *See* Oct. 25, 2018 Trial Tr. (10/25/18 Tr.) at 11, ECF No. 202.[1] Through several coordinated purchases by an undercover officer, investigators identified Wayne Holroyd as a supplier of crack cocaine to the neighborhood. *See* Oct. 24, 2018 Trial Tr. (10/24/18 Tr.) at 168, ECF No. 201. Investigators wiretapped his phone, 10/25/18 Tr. at 19, and heard conversations between him and Bell, *id.* at 45. During those calls, Bell would ask to meet

---

[1] All page citations refer to the page numbers generated by the Court's CM/ECF system.

Holroyd and would reference quantities of things that Bell wanted Holroyd to give him. *See, e.g.*, Oct. 29, 2018 Trial Tr. (10/29/18 Tr.) at 88, ECF No. 203 ("Yo, I'm going to need another one.").

In early March 2017, Bell asked for "two." *Id.* at 93. FBI Special Agent Ben Bullington positioned himself near a parking lot where Bell and Holroyd agreed to meet. *See* 10/25/18 Tr. at 30. He saw a red Nissan pull in and leave about a minute later. *See id.* at 31. Bullington then saw Holroyd drive away in a different car. *See id.* at 32. Bullington reported the Nissan to the U.S. Park Police and asked them to stop the car because he suspected that the driver possessed drugs. *See id.* at 50.

Park Police Investigator Andrew Kenness and Officer Ryan McDermott stopped the Nissan as it swerved between lanes on Interstate 695. *See id.* at 56. Bell was the driver and sole occupant. *See id.* at 60. The officers asked him to step out of the car and then asked if he had any weapons. *See id.* at 61. Bell replied, "I have a permit for it." *Id.* At that point, the officers patted him down. *See id.* at 62. They found a loaded handgun in his front pocket. *See id.* Based on that discovery, the officers placed Bell under arrest and searched him more thoroughly. *See id.* In his rear pocket, they found a magazine for the gun. *See id.*

At some time during the search, Park Police Officer David LaGrossa arrived in another cruiser. *See id.* at 80. When the officers tried to search Bell's groin area, they noticed that "he was clenching his buttocks." *Id.* at 63. The officers decided to conduct a strip-search once they got Bell to a police station. *See id.* Which officer drove him there is unclear. Keness testified that he did not recall which officer transported Bell. *See id.* at 80. LaGrossa likewise did not recall who took Bell from the scene but testified that he did not do so. *See id.* at 92.

2

The officers drove Bell to a Park Police station. *See id.* at 64. There, the officers removed Bell's clothing and found between his buttocks two plastic bags "containing a rock-like substance." *Id.* at 90. Combined, the bags held 6.27 grams of crack cocaine. *See* 10/29/18 Tr. at 85.

To keep the investigation covert, the Government chose not to charge Bell immediately. *See* 10/25/18 Tr. at 39. The investigation ended later in 2017, and a grand jury indicted Bell for one count of conspiracy to distribute and possess with intent to distribute cocaine base, one count of unlawful possession with intent to distribute cocaine base, and one count of using, carrying, and possessing a firearm during a drug trafficking offense. *See* Indictment at 1, 15, ECF No. 1. Officers arrested Bell in December 2017. *See* 10/25/18 Tr. at 36.

Bell moved to suppress the drugs. *See* Mot. to Suppress, ECF No. 70. At a hearing on that motion, Keness testified to the details of the search as described above. *See* Mot. Hr'g Tr. at 37–51, ECF No. 200. The Court found Keness "credible in all of his testimony," *id.* at 52, including that Bell had clenched his buttocks during the initial search, *see id.* at 54. Based on these and other findings, the Court upheld the traffic stop, arrest, and strip search, and denied Bell's motion. *See id.*

At trial, Kenness and LaGrossa testified about the stop and the search. The jury also heard recordings of post-arrest calls from Bell to Holroyd in which Bell asked for more drugs. *See* 10/25/18 Tr. at 34–35. And the jury heard testimony from Lorenzo Moore, a drug dealer in the same neighborhood. Moore testified that he had sold drugs to Bell more than once in 2017. *See id.* at 161–62. Finally, a detective from Prince William County, Virginia, testified that an informant with his office had twice bought crack cocaine from Bell in November 2017. *See* 10/29/18 Tr. at 8–26. Bell neither testified nor presented evidence at trial.

3

The jury convicted Bell of unlawfully possessing crack cocaine and under 18 U.S.C. § 924(c)(1) of possessing a firearm in connection to a drug crime. *See* Oct. 31, 2018 Trial Tr. at 7–8, ECF No. 204. But the jury acquitted him of conspiracy. *See id.* The Court then sentenced Bell to 130 months' imprisonment. *See* Judgment at 3, ECF No. 175.

On appeal, Bell argued that the Court should have denied a Government motion to amend the indictment and should have granted his motion to suppress due to a lack of signatures on a wiretap authorization. *See United States v. Bell*, 811 F. App'x 7, 7–8 (D.C. Cir. 2020). He also challenged a two-level enhancement that the Court applied at sentencing. *See id.* at 9. The D.C. Circuit affirmed the conviction and the sentence. *See id.* at 10.

Now before the Court is Bell's motion under 28 U.S.C. § 2255 to vacate his sentence. *See* Mot. to Vacate, ECF No. 283 (Mot.). He filed the motion *pro se*. After the Government responded, *see* Govt's Mem. in Opp'n, ECF No. 289 (Opp'n), Bell replied with help of counsel, *see* Reply, ECF No. 297 (Reply). The motion is now ripe.[2]

## II.

Under § 2255, a federal prisoner may ask the sentencing judge to vacate, set aside, or correct a sentence that was "imposed in violation of the Constitution or laws of the United States," was imposed "in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). Courts rarely grant these motions out of respect for the finality of judgments and because defendants can raise most objections during trial or on direct appeal. *See United States v. Koumbairia*, 17 F. Supp. 3d 81, 84 (D.D.C. 2014). To that end, a prisoner usually may not bring under § 2255 a claim that he failed to bring during his direct appeal. *See Reed v. Farley*, 512 U.S. 339, 354 (1994). Claims alleging ineffective assistance of

---

[2] The Court has jurisdiction over this motion under 28 U.S.C. § 2255(a).

4

counsel are an exception to that general rule. *See Massaro v. United States*, 538 U.S. 500, 509 (2003).

When faced with a timely § 2255 motion, the Court generally must "grant a prompt hearing [ ], determine the issues and make findings of fact and conclusions of law[.]" 28 U.S.C. § 2255(b). The Court need not conduct such an evidentiary hearing, however, when the record of the case and the motion "conclusively show that the prisoner is entitled to no relief." *Id.* And because this Court presided over Bell's trial, it has wider discretion to deny his motion without a hearing. *See United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996).

### III.

Bell says that his trial and appellate counsel were ineffective and that he is entitled to discovery about the officers' search of him. The Court first considers his ineffective-assistance claims and then his request for discovery. One of his ineffective-assistance claims fits more comfortably with his discovery request and thus the Court addresses them together. The Court concludes with a discussion of the relationship between Bell's trial and appellate counsel.

### A.

The Sixth Amendment guarantees the right to effective assistance of counsel during trials and appeals. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance, a defendant must show (1) that counsel's performance was deficient and (2) that counsel's performance prejudiced the defense. *See id.* at 687. Both prongs require their own showings. For deficiency, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" as defined by "prevailing professional norms." *United States v. Abney*, 812 F.3d 1079, 1086 (D.C. Cir. 2016) (cleaned up). This "first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).

5

The second prong is similarly "substantial." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (cleaned up). For prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because failure to meet either prong will doom a defendant's claim, the Court need not reach both prongs. *See United States v. Brinson-Scott*, 714 F.3d 616, 623 (D.C. Cir. 2013).

**1.**

The Court starts with the low-hanging fruit. Bell faults his trial and appellate counsel for their failure to argue that his gun conviction was unconstitutional under *United States v. Davis*, 139 S. Ct. 2319 (2019). *See* Mot. at 4, 5. This is a non-starter. *Davis* invalidated on vagueness grounds convictions for possession of a gun in connection with a "crime of violence" as defined by 18 U.S.C. § 924(c)(3)(B). *See Davis*, 139 S. Ct. at 2336. Bell's jury convicted him of gun possession in connection with a "drug trafficking crime," *see* Judgment at 2, which has its own statutory definition that *Davis* did not consider, *see* 18 U.S.C. § 924(c)(2). In short, *Davis* does not affect Bell's conviction. Any failure by his lawyers to raise that case thus would not change the outcome of his trial or appeal.

Likewise, Bell appears to argue that his appellate counsel acted improperly when she failed to argue that his conviction under § 924(c) violated the Fifth Amendment's Due Process Clause and the separation of powers. *See* Mot. at 8. This argument is meritless—no court has invalidated § 924(c) on those grounds. *See* Opp'n at 15–16 (collecting cases). Appellate counsel

"is not ineffective for declining to pursue a losing argument." *Johnson v. Wilson*, 960 F.3d 648, 656 (D.C. Cir. 2020) (cleaned up).[3]

**2.**

Bell's claim that his trial counsel prevented him from testifying is harder. According to Bell, his testimony would have challenged the officers' story about who transported him to the police station, *see* Mot. at 16, and would have asserted that the officers planted the drugs on him, *see* Reply at 4. But Bell's trial counsel allegedly blocked his testimony and threatened him "with a mental evaluation" if he testified. Mot. at 16.

As a criminal defendant, Bell had the absolute right to testify in his own defense. *See Rock v. Arkansas*, 483 U.S. 44, 52 (1987). When raised in an ineffective-assistance claim, however, a defendant's failure to testify does not per se create prejudice. *See United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996). Instead, the Court "assign[s] special significance to the defendant's precluded right to testify" and "inquire[s] whether it is reasonably probable that the defendant's testimony would have changed the outcome of the trial in his favor." *Id.*

Bell's testimony would not have changed the outcome here. Consider first his intended attack on the officers' credibility. Bell says that neither Keness nor LaGrossa transported him to the station. *See* Mot. at 7. But neither officer testified otherwise. They could not recall exactly who transported Bell to the station, but LaGrossa testified that he did not do so. Thus, under all versions—including Bell's—McDermott could have transported Bell. *See* 10/25/18 Tr. at 80, 92. His testimony would not have added much on that factual detail, nor would it have rebutted

---

[3] If Bell raises a freestanding claim that his conviction violates due process and separation of powers, he never made that claim on direct appeal, preventing any consideration of it now. *See Reed*, 512 U.S. at 354. And even if appellate counsel's failure to raise it constitutes "cause" for Bell's default, he still must show "actual prejudice from the alleged violation." *Id.* (cleaned up). Because the argument is meritless, he cannot show prejudice.

7

the other evidence about Bell's involvement in the drug business, particularly his call that day to Holroyd asking for "two." 10/29/18 Tr. at 93.

Indeed, regardless of content, Bell's testimony likely would have hurt his defense. Had he testified, the Government would have cross-examined him about his actions and the strong evidence of his guilt, none of which he contests now. *See Brown v. United States*, 356 U.S. 148, 155 (1958). That evidence includes the various phone calls and text messages from Bell to Holroyd and Moore seeking drugs, the observed drug transactions in Virginia, and his possession of a gun when police stopped him. The Government would have emphasized all of this and attacked Bell's credibility in other ways. Recall also that the jury *acquitted* Bell of conspiracy. Cross-examination about his knowledge of and dealings with Holroyd easily could have complicated his defense on that count and might have led to a worse verdict, not one "in his favor." *Tavares*, 100 F.3d at 998; *see also United States v. Blackson*, 236 F. Supp. 3d 1, 8 (D.D.C. 2017) (finding no ineffective assistance where defendant's testimony "would have a negative impact because the government could introduce more bad character evidence against him" (cleaned up)).

More, the trial record firmly rebuts Bell's assertion that defense counsel forced him not to testify. When questioned by the Court, Bell affirmed that he had "voluntarily decided not to testify" and understood that he alone "control[led] this decision." 10/29/18 Tr. at 44. The Court credited those representations and still does. And Bell confirmed his assertion with a signed waiver form. *See* ECF No. 108. At no time did Bell suggest or hint that his lawyer had coerced him not to testify. The Court is unpersuaded by his last-ditch efforts now to impeach his own statements.

8

On this record, therefore, Bell has not shown that his counsel's error, if any, caused him prejudice. His testimony likely would have hurt his case, not helped it, "given the facts of the case." *Tavares*, 100 F.3d at 999.

**3.**

Last among his freestanding ineffective-assistance claims, Bell challenges trial counsel's actions in relation to a possible plea deal. The Government extended a plea offer for Bell to plead guilty only to the gun charge. *See* Mot. Hr'g Tr. at 67. Bell declined. *See id.* He now says that he declined because he believed a trial would force the Government to produce body-worn camera footage showing the officers planting drugs on Bell. *See* Reply at 5. But the Park Police did not wear body-worn cameras at the time, *see* Reply, Ex. B, ECF No. 297-2, so the Government had no footage to produce. Bell says that if counsel had properly investigated and learned about the lack of that footage, Bell would have accepted the plea offer. *See* Reply at 5.

Because this claim first appears in Bell's reply brief, he has forfeited it. *See Waters v. Lockett*, 896 F.3d 559, 572 (D.C. Cir. 2018); *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006). But even if the Court entertained it, Bell's theory remains fanciful. The Court found credible the testimony that he clenched his buttocks when searched. *See* Mot. Hr'g Tr. at 54. Under Bell's facts, then, officers invasively placed drugs in his buttocks *after* they observed him clenching up. That they needed to plant drugs is highly improbable given Bell's other drug dealings in the neighborhood and in Virginia. And investigators heard Bell ask Holroyd for "two" that day, saw them meet at and leave the same parking lot, and found two bags of drugs in Bell's buttocks. And, of course, body-worn cameras do not record continuously but only when activated by the officer. The idea that officers would have chosen to activate their non-existent cameras to record their illegal planting of drugs in Bell's buttocks is beyond absurd. Bell's claim here is nothing

9

but an attempt at a do-over in light of his trial conviction. Even if Bell had not forfeited this claim, the Court would reject it as an insincere attempt to re-wind the clock to lessen his exposure.

**B.**

Now for Bell's discovery request. As a habeas petitioner, he has no entitlement to discovery. *See Bracy v. Grimley*, 520 U.S. 899, 904 (1997). Instead, federal rules allow discovery when a petitioner shows "good cause" for his request. *See* Rule 6(a) of the Rules Governing § 2254 Cases and § 2255 Proceedings in the U.S. District Courts. For good cause, a petitioner must make "specific allegations" showing that, "if the facts are fully developed," the Court has reason to believe he is entitled to relief. *Bracy*, 520 U.S. at 908–909 (cleaned up). And a petitioner must present more than "[m]ere speculation" that discoverable material exists. *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

For his trial, Bell wanted the video of his arrest and searches. So his trial counsel asked the Government for footage from the officers' body-worn cameras and from the police station. *See* Mot. at 14. The Government responded by email that it did not know whether any such footage existed but would check. *See id.* Bell now asks for "all video-footage of arresting officers." *Id.* at 8. Construed broadly, that request applies to footage from body-worn cameras and from the police station.

Neither request meets the good cause standard. Recall that Park Police officers did not have body-worn cameras at the time. *See* Reply, Ex. B. Bell thus makes no showing that the footage even exists. Ditto for the police station video. He merely speculates about its existence,

10

which does not suffice for good cause.[4]  *See Strickler*, 527 U.S. at 286.  More, even if station video existed, it would not support Bell's theory.  He alleges that officers planted the drugs "in the backseat" of the car during transport to the station, not once they arrived there.  Mot. at 16.  Footage from the station thus would not show any officer planting the drugs.  Instead, according to both his theory and the Government's, this video would show officers finding drugs secreted on his person: inculpatory—not exculpatory—evidence.  Bell therefore makes no allegation that the video, if it exists, would show "that he is entitled to relief." *Bracy*, 520 U.S. at 909 (cleaned up).

    For the same reasons, Bell's lawyer was not ineffective for his failure to obtain this evidence.[5]  *See* Mot. at 16 (faulting counsel for "fail[ing] to suppress alleged contraband").  The body-worn footage did not exist, so counsel did not act deficiently when he failed to get it.  *See Brooks v. United States*, No. 17-5705, 2018 WL 3105402, at *5 (6th Cir. Jan. 22, 2018) (unpub., per curiam).  And even if the station footage existed, it captured actions taken after Bell says the officers planted drugs on him.  The result of the suppression hearing thus "would [not] have been different" had it included that footage.  *Cullen*, 563 U.S. at 189 (cleaned up).  By the same token, Bell's appellate counsel was not ineffective for failing to seek this evidence or pursue the "losing argument" that its absence mandated reversal of his conviction.  *Johnson*, 960 F.3d at 656.

---

[4]  Bell's speculation also fails to rebut the presumption that Government counsel "properly discharged their official duties" and did check whether any footage existed.  *Bracy*, 520 U.S. at 909 (cleaned up).

[5]  Bell also says that his lawyer should have filed a motion for this evidence rather than simply email a request to the Government.  *See* Mot. at 8.  Of course, a motion to the Court is no more successful when the requested evidence does not exist.

## C.

One final argument permeates many of Bell's statements and thus deserves separate mention. Bell's appellate counsel, Mary Davis, is his trial counsel's wife. *See Pro Se* Reply at 3, ECF No. 297-1 (*Pro Se* Reply). Bell argues that she "was unwilling to challenge any" alleged error by Christopher Davis because of their relationship. Mot. at 7. Stated simply, she "ha[d] a conflict of interest" during Bell's appeal. *Pro Se* Reply at 3.

This claim arises under a different framework than the mine run of ineffective-assistance claims. So-called "conflict of interest" challenges avoid *Strickland*'s "more stringent two-part test." *United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998). Instead, the applicable test comes from *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Under *Cuyler*, a defendant succeeds if he shows that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. "Where a defendant meets the *Cuyler* test, prejudice is presumed." *Gantt*, 140 F.3d at 254.

D.C. Circuit precedent leads to the inescapable conclusion that an actual conflict existed. The court recently held that Mary Davis had a conflict when her client's interest required her on habeas review to assert the ineffectiveness of her husband (and herself) during trial. *See United States v. Scurry*, 992 F.3d 1060, 1069–70 (D.C. Cir. 2021) (per curiam). So too here—her appellate representation forced her to "make a choice advancing [her] own interests," namely her loyalty to her husband, "to the detriment" of Bell's interest on appeal. *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996) (cleaned up).

To show that the conflict adversely affected his appeal, however, Bell "must articulate a strategy that a reasonable, nonconflicted defense counsel would have pursued." *United States v. Tucker*, 12 F.4th 804, 819 (D.C. Cir. 2021) (per curiam). Bell fails this standard because he identifies only meritless strategies. He first says that Mary Davis should have argued that *United*

12

*States v. Davis* invalidated his conviction. *See* Mot. at 5; *Pro Se* Reply at 3, 5, 6, 7. But recall that this decision did not apply to Bell's conviction. Second, he faults Mary Davis for not arguing that her husband had ineffectively blocked Bell's testimony. *See* Mot. at 7; *Pro Se* Reply at 3. Again, this Court has explained that such a claim fails the *Strickland* test given Bell's on-the-record statements and the risk that cross-examination would damage Bell's credibility. So although Mary Davis had a conflict, Bell has identified no "*legitimate* argument" that she failed to make on appeal because of that conflict. *Bruce*, 89 F.3d at 896 (emphasis added).

Of course, Mary Davis could have raised an ineffective-assistance claim against her husband on some other basis. *See United States v. Rashad*, 331 F.3d 908, 909 (D.C. Cir. 2003) (allowing such claims on direct appeal). But Bell identifies no argument that would make any such claim a "potential avenue of relief." *Scurry*, 992 F.3d at 1068. Indeed, based on Bell's arguments now, no attorney "would have acted differently" on appeal than Mary Davis did. *Gantt*, 140 F.3d at 254.

Because Mary Davis's conflict did not adversely affect her representation of Bell, her conflict of interest does not create a Sixth Amendment violation.

\* \* \*

Finally, Bell asks for an evidentiary hearing. *See* Reply at 2. The Court need not convene one because, for the reasons discussed, the relevant materials "conclusively show" that Bell has no right to relief. 28 U.S.C. § 2255(b). He entirely "fails to allege sufficient facts or circumstances" that show "constitutionally deficient performance." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (cleaned up). And factually he presents no affidavits and barely any evidentiary support for the statements in his motion. *See United States v. Flowers*, 281 F.

Supp. 3d 166, 182 (D.D.C. 2018). More, this Court presided over Bell's trial and thus may comfortably deny a hearing given its own familiarity with the case and the trial record. *See United States v. Gooch*, 842 F.3d 1274, 1280 n.3 (D.C. Cir. 2016) (allowing wider discretion to deny a hearing when same judge who presided over trial also adjudicates § 2255 motion).

**IV.**

For these reasons, Bell's [283] Motion to Vacate is DENIED. The Clerk of Court is requested to close Case No. 1:21-cv-02425, the civil case based on Bell's motion.

**SO ORDERED.**

Dated: June 18, 2022                                               TREVOR N. McFADDEN, U.S.D.J.